**KMR-15**

2016 DS 00;

ESTADO LIBRE ASOCIADO DE PUERTO RICO
DEPARTAMENTO DE SALUD
SAN JUAN, PUERTO RICO

CONTRATO PARA MEDICOS EN ADIESTRAMIENTO POSTGRADUADO
INTERNADO - RESIDENCIA MEDICA

COMPARECEN

**DE LA PRIMERA PARTE:** El **DEPARTAMENTO DE SALUD**, representado por su Secretaria de Salud **ANA C. RIUS ARMENDARIZ, MD**, mayor de edad, soltera, médico de profesión y vecina de **GUAYNABO**, Puerto Rico, o representado por el Subsecretario de Salud, **GREDUVEL DURAN GUZMAN, MD, MPH**, mayor de edad, casado, médico de profesión y vecino de **SAN JUAN**, Puerto Rico, quien comparece en representación de la Secretaria de Salud y está autorizado a firmar contratos en virtud de la delegación hecha por la Secretaria en comunicación del 16 de Septiembre de 2013, de conformidad con la Ley Núm. 81 del 14 de marzo de 1912, según enmendada, en adelante denominada la **PRIMERA PARTE**.



**DE LA SEGUNDA PARTE:** _JORGE SANCHEZ VIVALDI_ mayor de edad, _SOLTERO_ vecino de _CABO ROJO_ Puerto Rico, egresado de la Escuela de Medicina, _UNIVERSIDAD AUTONOMA DE GUADALAJARA, MEXICO_ en adelante denominado la **SEGUNDA PARTE**.

EXPONEN

De conformidad con la Ley 81 del 14 de marzo de 1912, según enmendada y la Ley 47 de 4 de enero de 2003, **AMBAS PARTES** manifiestan tener la capacidad legal necesaria para otorgar el presente Contrato y en consecuencia lo formalizan de acuerdo con las siguientes:

CLAUSULAS Y CONDICIONES

**PRIMERA:** La **PRIMERA PARTE**, a través de los programas de adiestramiento a médicos postgraduados que se ofrecen en Puerto Rico, se compromete a subvencionar a la **SEGUNDA PARTE**, para que ésta pueda realizar su adiestramiento médico postgraduado y/o residencia en la especialidad abajo indicada, en las instituciones hospitalarias en las que está autorizada a ejercer la **SEGUNDA PARTE**, según lo dispuesto en su Licencia Profesional expedida por la Junta de Licenciamiento y Disciplina Médica (JLDM) de Puerto Rico.

**SEGUNDA:** LA **SEGUNDA PARTE**, como parte de su adiestramiento postgraduado, vendrá obligada a prestar servicios como **MEDICO RESIDENTE NIVEL I** en el Departamento de **TRANSICIONAL** del **HOSPITAL EPISCOPAL SAN LUCAS PONCE** propiedad del **SAINT LUKE'S MEMORIAL HOSPITAL.**

**TERCERA:** AMBAS PARTES se obligan a cumplir con la Ley Núm. 47 de 4 de enero de 2003, Ley para regular los turnos de trabajo de los médicos internos y residentes en Puerto Rico.

**CUARTA:** En consonancia con las normas del Comité de Acreditación de Educación Médica Graduada (ACGME) de los Estados Unidos, la **SEGUNDA PARTE** acepta:

1. Desarrollar un programa personal de estudios y de experiencia profesional bajo la supervisión de la facultad médica de la institución.
2. Participar bajo supervisión con el máximo de eficiencia, seguridad, dedicación y compasión en el cuidado médico de los pacientes, a tenor con su nivel de desarrollo y responsabilidad.
3. Involucrarse completamente en las actividades educativas de su programa y según se le requiera, asumir responsabilidades por la enseñanza de otros residentes o estudiantes.



1

KMR-15

4. Participar en los programas institucionales y en las actividades relacionadas con la facultad médica y adoptar las normas, procedimientos y prácticas establecidas en la institución.
5. Participar en comités y consejos institucionales, especialmente aquellos relacionados con evaluaciones de cuidado médico.
6. Aplicar medidas de control de costos al proveer el cuidado médico.
7. Participar en programas de investigación clínica o básica que promueven el desarrollo médico educacional.

**QUINTA:** En cumplimiento con la Ley Núm. 47 de 4 de enero de 2003, **LA SEGUNDA PARTE** se obliga:

1. A no excederse de (24) horas de trabajo continuo e ininterrumpido en contacto directo o indirecto en el tratamiento a un paciente.
2. A no trabajar más de (80) horas semanales, independiente de la Institución Hospitalaria.
3. A notificar a la Institución Hospitalaria de cualquier empleo distinto al que desempeña en el hospital y el horario dedicado a dicho trabajo.

**SEXTA: ACOSO SEXUAL:** La **PRIMERA PARTE** podrá resolver el presente contrato de forma inmediata, si la **SEGUNDA PARTE** es acusada de Acoso Sexual según dispuesto en el Artículo 135 del Código Penal de Puerto Rico.

- **HOSTIGAMIENTO SEXUAL:** La **PRIMERA PARTE** tiene la responsabilidad de velar por un ambiente de trabajo sano y de respeto, obligándose a observar las disposiciones de la Ley Núm. 17 de 1988, según enmendada. La **SEGUNDA PARTE** se compromete a cumplir con estas disposiciones.

**SEPTIMA: USO DE MEDICAMENTOS Y/O TRATAMIENTO MEDICO:** Todo Médico Residente que por prescripción médica, este sometido a tratamiento farmacológico controlado o que interfiera con el Sistema Nervioso Central (SNC) deberá notificarlo de forma inmediata al Director del Programa de Educación Médica del centro donde presta servicios.

Cuando el desempeño de las funciones del Médico Residente se vean afectadas por el uso de medicamentos como parte del tratamiento, el Director del Programa podrá tomar las medidas correspondientes para asegurar el bienestar y seguridad de los pacientes.

Cuando el Médico Residente estuviere bajo tratamiento farmacológico y no informare el mismo al Director, se podrá rescindir el contrato cuando su desempeño se vea afectado

**OCTAVA: GUARDIAS:** La **SEGUNDA PARTE** hará guardias médicas no mas de cada tres días excepto en aquellos servicios en que, mediante mutuo acuerdo, el Jefe de Departamento y la **SEGUNDA PARTE** dispongan otra cosa, según lo estipula el Reglamento de Internos y Residentes de la Institución, las Políticas y Procedimientos Institucionales ("Institutional Requirements") y los Requerimientos de Programas ("Common Program Requirements") establecidos por el ACGME Cuando las guardias médicas sean nocturnas se realizarán por no más de cada tres (3) noches, según dispuesto en el artículo 4 (b) (3) de la Ley 47 de 2003.

El adiestrado deberá disfrutar de un (1) día de descanso por cada periodo de siete (7) días,promediado sobre cuatro (4) semanas, según las normas establecidas por el Comité de Acreditacion de Educacion Medica Graduada (ACGME)

El Jefe de Programa será responsable de realizar la programación correspondiente y el Director de Educacion Medica supervisara el cumplimiento de las normas establecidas.

**NOVENA:** En caso de que un paciente deba ser trasladado en ambulancia, a la **SEGUNDA PARTE** se le podrá requerir acompañar a ese paciente durante su traslado, a solicitud de su supervisor.

**DECIMA: SERVICIO EN SALA DE EMERGENCIA:** La **SEGUNDA PARTE** acepta que durante su adiestramiento podrá ser asignado, durante un período de tiempo, a una rotación diaria por la Sala de Emergencia de la institución, de no mas de doce (12) horas. En las guardias que la **SEGUNDA PARTE** haga durante el término de este contrato, contestará y evaluará consultas en Sala de Emergencia. Las consultas serán contestadas en un término de tiempo razonable, pero



2

KMR-15

siempre dentro del horario asignado a las guardias o al servicio de Sala de Emergencia. En caso de que la **SEGUNDA PARTE** no pueda contestar todas las consultas, según estipulado, notificará al Jefe de Residentes de su servicio o al Jefe de Departamento concernido para que éste tome las provisiones inmediatas para contestar y evaluar dichas consultas. Durante el período de las guardias no será necesario estar presente ni permanecer en el área de la Sala de Emergencia, a menos que no esté contestando una consulta. Esta cláusula podrá ser modificada por el Director del Programa de Adiestramiento, en casos en que la naturaleza de la especialidad no exija estas rotaciones en Sala de Emergencia.

**DÉCIMA PRIMERA: ESTIPENDIOS**: La **PRIMERA PARTE** ofrecerá a la **SEGUNDA PARTE** un subsidio de **$1,250.00** mensuales durante la vigencia del presente contrato.

Además, la **PRIMERA PARTE** le asignará a la **SEGUNDA PARTE** la cantidad de **$600.00** mensuales por concepto de vivienda, **$550.00** por concepto de comidas, si éstas no se le proveyesen en el hospital donde está realizando el adiestramiento, **$100.00** mensuales para gastos de libros y materiales y **$250.00** mensuales por concepto de becas especiales durante la vigencia de este contrato. En caso de que la vivienda fuera provista por el hospital la **SEGUNDA PARTE** pagará directamente a dicha institución hospitalaria la cantidad de dinero que esta última haya estipulado para la renta. Además, la **SEGUNDA PARTE** recibe los beneficios marginales tales como aportación al Seguro Social por **6.20%**, Medicare por **1.45%** y Fondo del Seguro del Estado por **3.35%**.

**PLAN MÉDICO**: La **PRIMERA PARTE** le concederá la cantidad de $150.00 (como aportación patronal del plan médico en el pago mensual correspondiente a becas a la **SEGUNDA PARTE** para que asuma el pago directo del plan médico de su preferencia. De acogerse a recibir dicha aportación patronal, deberá demostrar evidencia de su plan médico a la brevedad posible, y no más tarde de sesenta (60) días de haber comenzado el presente contrato. De lo contrario no podrá reclamar la aportación durante la vigencia del contrato. No se aceptará después de los (60) días ninguna reclamación de cambios a la cláusula del Plan Médico.



**Favor indicar si desea la aportación patronal del Plan Médico:**
Sí \_\_\_\_X\_\_\_\_ No_____

**LA PRIMERA PARTE** concederá a la **SEGUNDA PARTE** un subsidio adicional anual del **cuatro porciento (4%) del total de subsidio**. Este subsidio se concederá una vez al año, luego de cumplido los seis (6) meses de adiestramientos, excepto en aquellos casos en que una de las partes de por terminado el contrato, según se dispone la cláusula **VIGÉSIMA PRIMERA** antes de cumplirse los seis (6) meses de vigencia del mismo.

La **SEGUNDA PARTE**, se compromete a no recibir fondos para adiestramiento médico post-graduado de otras fuentes estatales o federales, o fundaciones educativas simultáneamente con lo que recibe de la **PRIMERA PARTE** y en caso de aceptar remuneración de esta naturaleza, se compromete a renunciar al estipendio mensual pagado por la **PRIMERA PARTE**.

**DÉCIMA SEGUNDA: LICENCIA PARA EJERCER LA MEDICINA**: La **SEGUNDA PARTE** se obliga a presentarle a la **PRIMERA PARTE** evidencia de la licencia correspondiente para ejercer la profesión de la medicina en Puerto Rico expedida por la Junta de Licenciamiento y Disciplina Médica de Puerto Rico o en su defecto, evidencia de haberla solicitado. La **SEGUNDA PARTE** se compromete a obtener la misma a la brevedad posible y nunca más tarde de (60) días calendario de la vigencia del contrato. El Director de Educación Médica de cada Institución de Adiestramiento se hará responsable del envío de licencia expedida por la Junta de Licenciamiento y Disciplina Médica de Puerto Rico, a la Oficina de Educación Médica Graduada del Departamento de Salud. En caso de incumplimiento de esta cláusula, la **PRIMERA PARTE** podrá dar por terminado' este contrato.

**DÉCIMA TERCERA: PERIODO DE DESCANSO**:

La **PRIMERA PARTE** le concederá a la **SEGUNDA PARTE** treinta (30) días calendario de tiempo para descanso (vacaciones) durante el año. Este período de tiempo se concederá a partir de la vigencia del contrato.

El periodo de descanso será disfrutado de acuerdo a las normas del Programa de Adiestramiento.



KMR-15

El tiempo de descanso que no se utilice no se pagará en dinero a la terminación del contrato, ni se trasladarán a contratos futuros. El tiempo disfrutado en exceso de los treinta (30) días deberá ser repuesto a discreción del Director del Programa mediante certificación a tales efectos.  La contabilidad y concesión de este periodo será administrado por el Director de la Oficina de Educación Médica Graduada del Hospital.

El periodo autorizado en exceso de los treinta (30) días regulares deberá ser notificado por el Programa al Departamento de Salud dentro de las 24 horas de advenir en conocimiento.

## DÉCIMA CUARTA:  PERIODO POR ENFERMEDAD:

La **SEGUNDA PARTE** tendrá derecho a disfrutar hasta agotar dieciocho (18) días por concepto de enfermedad, los cuales utilizará exclusivamente cuando se encuentre enfermo (a) o incapacitado. La licencia por enfermedad deberá usarse durante la vigencia de este contrato y no se pagará en dinero en caso de que no fuera disfrutada, ni se transferirá a contratos futuros.

El tiempo disfrutado en exceso del periodo de enfermedad la **SEGUNDA PARTE** deberá reponerlo sin paga, al terminar el periodo de este contrato, a discreción del supervisor. Si el disfrute de los (18) días afectara la formación académica, según lo determine el Director de Educación Médica en el caso de los internos o el Director de Programa en caso de residentes, la **SEGUNDA PARTE** deberá reponer dicho tiempo o rotación sin paga según disponga el funcionario antes mencionado.



Si la **SEGUNDA PARTE** fuese mujer en estado de embarazo y el alumbramiento ocurriera durante la vigencia del contrato tendrá derecho a un periodo por maternidad de cuatro (4) semanas a partir del alumbramiento.

La **SEGUNDA PARTE** no acumulará periodo de vacaciones ni de enfermedad mientras disfrute del periodo por maternidad.  La solicitud del periodo por maternidad deberá acompañarse de un certificado indicativo de la fecha aproximada del alumbramiento.

La **SEGUNDA PARTE** se compromete a reponer sin paga el tiempo que disfrute del periodo por maternidad previo acuerdo con el Jefe de Departamento concernido o el Director de Educación Médica Graduada según aplique.

La **SEGUNDA PARTE** tendrá derecho a disfrutar de una licencia por paternidad, por año de servicio hasta dos (2) semanas siguientes al nacimiento de un hijo, lo cual acreditará mediante certificado de nacimiento del recién nacido o declaración jurada de la **SEGUNDA PARTE** a estos efectos.

Por ser éste un sistema de enseñanza, no es política del Departamento de Salud conceder tiempo libre adicional (permiso para ausentarse) que no sea establecido en el contrato de los residentes. Sin embargo, circunstancias especiales podrían ser consideradas por los Directores de Programas, luego del visto bueno del Comité de Educación Médica. En circunstancias extremas en que este tiempo se conceda sería un tiempo sin paga y sin beneficios marginales y no podrá concederse por un período mayor de un (1) año.

El periodo autorizado en exceso de dieciocho (18) días de enfermedad deberá ser notificado por el Programa al Departamento de Salud dentro de las 24 horas de advenir en conocimiento para realizar el descuento correspondiente.

## DÉCIMA QUINTA:  ASISTENCIA:

La **SEGUNDA PARTE** firmará diariamente una hoja de asistencia.  Estará presente físicamente durante horas y días laborales, según requerido por el Director de Educación Médica. Cuando tenga que ausentarse momentáneamente del lugar de trabajo, deberá notificarlo al Jefe de Departamento concernido o al Director de Educación Médica.



AMBAS PARTES entienden que en la función educativa de cada Departamento o Sección, dentro de la Institución donde se lleva a cabo el adiestramiento es necesario cumplir con los requisitos de las Juntas Acreditadoras. Por este motivo, debe ponerse de acuerdo con el Jefe de Departamento concernido o el Director de Educación Médica Graduada, según aplique, en cuanto a la forma de cumplir con el tiempo en que estuvo ausente de su adiestramiento para que la **SEGUNDA PARTE** pueda cumplir con los requisitos de la Junta ("Board") de la especialidad o subespecialidad a la que pertenece y obtener la certificación académica del programa de entrenamiento. La **SEGUNDA PARTE** no recibirá compensación monetaria durante ese período de reposición para la satisfacción de los requisitos exigidos por las Juntas Acreditadoras. La **SEGUNDA PARTE** tampoco recibirá compensación o estipendio alguno, si ésta debe cumplir con tiempo extra por deficiencias académicas.

**DÉCIMA SEXTA:** **FONDO DEL SEGURO DEL ESTADO:** En caso de accidentes ocupacionales, los Internos y Residentes estarán cubiertos por la Póliza del Fondo del Seguro del Estado, que mantiene vigente el Departamento de Salud.

**DÉCIMA SEPTIMA:** **SEGURO DE VIDA:** La **PRIMERA PARTE** proveerá a cada médico un seguro de vida igual al que en cualquier momento disfruten los empleados acogidos a la Asociación de Empleados del Estado Libre Asociado de Puerto Rico.

**DÉCIMA OCTAVA:** **BENEFICIOS MARGINALES:**

La **PRIMERA PARTE** o el hospital donde La **SEGUNDA PARTE** esté realizando su adiestramiento clínico post-graduado proveerá a la **SEGUNDA PARTE** los siguientes beneficios marginales; disposición y habilitación de facilidades de descanso para los diferentes equipos de guardias que incluyan entre otros: batas, guantes de latex, protectores de ojos y delantales de plomo contra radiaciones ionizantes.



Además, se proveerá comida durante el período de guardias de la siguiente forma: (a) durante el período de guardias regulares (4:00pm – 7:00am), se le ofrecerá una (1) comida; (b) durante el período de guardia de veinticuatro (24) horas, se le ofrecerá tres (3) comidas.

**DECIMA NOVENA:** **EVALUACIÓN:** Se someterá a la **SEGUNDA PARTE** al proceso de evaluación vigente, el cual será notificado al comienzo del año académico en forma regular y de acuerdo a las normas establecidas en el Departamento donde realiza su adiestramiento. Este contrato se renovará sólo en aquellos casos donde la **SEGUNDA PARTE** demuestre en sus evaluaciones aprovechamiento y progreso en conocimiento, destrezas y actitudes, conmensurables a su nivel de adiestramiento, a satisfacción del Comité de Evaluación y Promoción Departamental y del Director del Programa de Adiestramiento en dicho Departamento.

**VIGESIMA:** **VIGENCIA Y RESOLUCIÓN:**

Este contrato entrará en vigor a partir de la firma de la **PRIMERA PARTE** y estará vigente hasta el **30 DE JUNIO DE 2016.** En el caso de que la **SEGUNDA PARTE** tenga que reponer parte o la totalidad del adiestramiento por razones académicas, o porque se exceda en el tiempo de vigencia de este contrato, la **PRIMERA PARTE** no le pagará a la **SEGUNDA PARTE** estipendio por este tiempo adicional de reposición.

La **SEGUNDA PARTE** se regirá por los estatutos y reglas que gobiernen la institución donde reciba su adiestramiento, así como las otras Leyes Aplicables.

La **SEGUNDA PARTE** se compromete a no solicitar traslado del hospital ni pedir al Departamento de Salud que le solicite a la Junta de Licenciamiento y Disciplina Medica (JLDM) cambios de lugar en su licencia provisional durante el período de vigencia de este contrato.

La **PRIMERA PARTE,** en concordancia con los requisitos institucionales y de programas del "Accreditation Council for Graduate Medical Education (ACGME)", ha decidido establecer el siguiente protocolo con relación a cómo proceder, luego de recibir una decisión del ACGME.

A. Será responsabilidad de cada director de programa notificar a todos sus residentes los resultados de cada visita de acreditación lo más pronto posible, luego de ser recibida dicha



2 0 16 DS 0 0 7

notificación. Esta deberá realizarse tanto verbalmente como por escrito. Copia de la notificación deberá enviarse al Director de Educación Médica.

B. Cuando la decisión del ACGME es adversa y se decide poner al programa en probatoria o se le retira la acreditación, copia de dicha comunicación se le debe enviar al Director de Educación Médica y dicha decisión debe ser notificada por escrito a la **SEGUNDA PARTE** dentro de un período no mayor a treinta (30) días laborables a partir del recibo de dicha carta.

C. En el caso de que la decisión del ACGME sea no acreditar un programa, y luego de agotados los medios apelativos que se consideren, según las circunstancias, el Director de Programa realizará todas las diligencias necesarias para facilitar la relocalización de los residentes afectados en otros Programas de Residencia. La **PRIMERA PARTE** no se responsabiliza por la relocalización de residentes afectados en caso de pérdida de acreditación de Programas de Residencia. En el caso que un residente logre obtener una relocalización por pérdida de acreditación, la subvención objeto de este contrato podrá extenderse previa enmienda por escrito y firmada por **AMBAS PARTES**, sujeto a cualquier otro requisito y/o trámite de rigor aplicable.

La **SEGUNDA PARTE** es responsable de realizar la solicitud de entrada al programa que le interese, según los requisitos del programa y de la institución en que se reubicaría. La **SEGUNDA PARTE** deberá entender que la posibilidad de ser reubicado dependerá en gran medida de sus calificaciones individuales y ejecutoria, tanto durante la residencia como en los resultados de los exámenes de diferentes juntas examinadoras y del examen del In-training o cualquier otro requisito establecido por el programa que lo aceptaría para continuar residencia.

Evidencia de estas gestiones deberán ser enviadas al Director de Educación Médica. Una vez se culmine el cierre del programa todos los expedientes de los residentes deben ser enviados a la Oficina de Educación Médica. Será responsabilidad del Director de Educación Médica asegurarse que este proceso se cumpla.

La **PRIMERA PARTE** podrá dar por terminado el presente contrato, previa notificación escrita a la **SEGUNDA PARTE** con treinta (30) días de antelación a la fecha en que tal determinación haya de ser efectiva.

La **PRIMERA PARTE** podrá dar por terminado este contrato si la **SEGUNDA PARTE** abandonase el adiestramiento y servicio sin justificación para tal abandono, previa vista a tales efectos, según dispone el ACGME en sus Reglamentos Institucionales ("Institutional Requirements") y de Programas ("Common Program Requirements").

La **PRIMERA PARTE** podrá dar por terminado este contrato debido a la negligencia, abandono de deberes o conducta impropia de la **SEGUNDA PARTE**, en violación a las normas al programa de adiestramiento médico graduado, o si la ejecutoria profesional de la **SEGUNDA PARTE** no estuviese de acuerdo a las normas, estatutos y reglamentos de las instituciones educativas o de los programas de adiestramiento correspondientes, previa vista a celebrarse, según dispone el ACGME en sus Reglamentos Institucionales ("Institutional Requirements") y de Programas ("Common Program Requirements").

La **PRIMERA PARTE** podrá dar por terminado este contrato si durante la vigencia del mismo la **SEGUNDA PARTE** dejó de notificar que se desempeña en otra Institución Hospitalaria y el horario dedicado a dicho trabajo.

La **PRIMERA PARTE** podrá dar por terminado este contrato por recomendación de la Facultad Médica, del Director del Programa de Adiestramiento o del Director de Educación Médica del Hospital correspondiente, cuando el aprovechamiento académico y las destrezas clínicas de la **SEGUNDA PARTE** sean deficientes o amenacen la salud, seguridad de los pacientes a su cargo. La **SEGUNDA PARTE** tendrá derecho a una vista previa a la terminación del contrato, según disponga el Reglamento de Internos y Residentes del Departamento de Salud y el ACGME en sus Reglamentos Institucionales ("Institutional Requirements") y de Programas ("Common Program Requirements").



6

2016 DS 007

KMR-15

La **PRIMERA PARTE** podrá dar por terminado este contrato si la **SEGUNDA PARTE** incumple con los términos de la "Ley 47 de 4 enero de 2003". **Ley para regular los turnos de los médicos internos y residentes en Puerto Rico.**

Este contrato sustituye cualquier contrato que se haya formalizado entre las partes, con anterioridad a la fecha de vigencia de éste.

La **SEGUNDA PARTE** entiende y acepta que la mayor responsabilidad en su adiestramiento es el servicio y cuido óptimo al paciente que le ha sido asignado o cuyo cuido se le ha delegado, ya sea el paciente ambulatorio, que esté hospitalizado o en consulta. A tales efectos, la **SEGUNDA PARTE** no sólo cumplirá con los requisitos médicos de calidad que requiere este servicio, sino que también cumplirá con la obligaciones administrativas que aseguren un mejor cuidado, tales como completar los expedientes médicos sin excepción, durante el tiempo estipulado en los reglamentos y estatutos del hospital, en el cual esté asignada. De no hacerlo así, la **SEGUNDA PARTE** estaría violando las normas hospitalarias y las condiciones de este contrato, lo que constituirá una causa suficiente para dar por terminado este contrato, de conformidad con la cláusula 18.6 y / 18.7.

**VIGESIMA PRIMERA:** <u>RECURSOS PARA PAGAR LOS SERVICIOS</u>:
Los estipendios estipulados en este contrato serán girados contra la partida de cifra de cuenta <u>111-0710000-1055-013-2016 (PRIFAS) 111-0711005-1055-013-2016 (PEOPLE SOFT 8.4) Pago de Becas y Vales para el Año 2015-2016</u>, y/o cualquier otra cifra de cuenta disponible durante la vigencia del contrato hasta un máximo de **$37,116.00** anuales.

**VIGÉSIMA SEGUNDA:** <u>CERTIFICACION DE PENSIÓN ALIMENTARIA</u>:

 La **SEGUNDA PARTE** certifica que no tiene obligación alimentaria para menores y someterá una Certificación Negativa expedida por la Administración para el Sustento de Menores (ASUME) o una Declaración Jurada bajo apercibimiento de perjurio o desacato, de que no tiene obligación alimentaria alguna.

Expresamente se reconoce que ésta es una condición esencial del presente contrato y de no ser correcta en todo o en parte la anterior certificación, esto será causa suficiente para que la parte contratante pueda dejar sin efecto el mismo y la parte contratada tendrá que reintegrar a la parte contratante toda suma de dinero recibida bajo este contrato.

___N/A·___ La **SEGUNDA PARTE** certifica y garantiza que está obligada a pagar un a pensión alimentaria y está cumpliendo con los pagos. La **SEGUNDA PARTE** someterá una Certificación de Cumplimiento expedida por la Administración para el Sustento de Menores (ASUME).

Expresamente se reconoce que ésta es una condición esencial del presente contrato y de no ser correcta en todo o en parte la anterior certificación, esto será causa suficiente para que la parte contratante pueda dejar sin efecto el mismo y la parte contratada tendrá que reintegrar a la parte contratante toda suma de dinero recibida bajo este contrato.

___N/A___ La **SEGUNDA PARTE** certifica que está obligada a pagar una pensión alimentaria y que tiene deuda por dicho concepto y está cumpliendo con los términos y condiciones del Plan de Pagos.

Expresamente se reconoce que ésta es una condición esencial del presente contrato y de no ser correcta en todo o en parte la anterior certificación, esto será causa suficiente para que la parte contratante pueda dejar sin efecto el mismo y la parte contratada tendrá que reintegrar a la parte contratante toda suma de dinero recibida bajo este contrato.

**VIGÉSIMA TERCERA:** <u>CUMPLIMIENTO CON LA LEY NUM. 168 DE 12 DE AGOSTO DE 2000</u>:

___N/A___ La **SEGUNDA PARTE** certifica y garantiza que está obligada a cumplir con las disposiciones de la Ley Núm. 168 del 12 de agosto de 2000, conocida como la "Ley de Mejoras al Sustento de Personas de Edad Avanzada de Puerto Rico" mediante la cual se establece el Programa para el Sustento de Personas de Edad Avanzada adscrito a la Administración para el Sustento de



7

2016 DS 00.

KMR-15

Menores (ASUME), el incumplimiento de esta cláusula conllevará la terminación inmediata del presente contrato.

Expresamente se reconoce que esta es una condición esencial del presente contrato, y de no ser correcta en todo o en parte la anterior certificación, esto será causa suficiente para que la parte contratante pueda dejar sin efecto el mismo y la parte contratada tendrá que reintegrar a la parte contratante toda suma de dinero recibida bajo este contrato.

La **SEGUNDA PARTE** certifica y garantiza que no está obligada a cumplir con las disposiciones de la Ley Núm. 168 del 12 de agosto de 2000, conocida como la "Ley de Mejoras al Sustento de Personas de Edad Avanzada de Puerto Rico" mediante la cual se establece el Programa para el Sustento de Personas de Edad Avanzada adscrito a la Administración para el Sustento de Menores (ASUME), el incumplimiento de esta cláusula conllevará la terminación inmediata del presente contrato

Expresamente se reconoce que esta es una condición esencial del presente contrato, y de no ser correcta en todo o en parte la anterior certificación, esto será causa suficiente para que la parte contratante pueda dejar sin efecto el mismo y la parte contratada tendrá que reintegrar a la parte contratante toda suma de dinero recibida bajo este contrato.

**VIGÉSIMA CUARTA: SOBRE HABILITACIÓN EN EL SERVICIO PÚBLICO:**

La **SEGUNDA PARTE** certifica que no ha incurrido en conducta deshonrosa, que no es adicto al uso habitual y excesivo de sustancias controladas y/o bebidas alcohólicas.

La **SEGUNDA PARTE** certifica que no ha sido convicto por delito grave, o por cualquier delito que implique depravación moral; ni ha sido destituido del servicio público.

La **SEGUNDA PARTE** certifica que no ha sido convicto, ni acusado, ni se ha encontrado causa probable para su arresto por ningún delito contra el erario, la fe o la función pública; contra el ejercicio gubernamental; o que involucre fondos o propiedad pública, en el ámbito federal o estatal.

La **SEGUNDA PARTE** certifica que durante los diez años anteriores a la formalización del contrato, no ha cometido ningún delito contra el erario, la fe o la función pública; contra el ejercicio gubernamental; o que involucre fondos o propiedad pública, en el ámbito federal o estatal.

La **SEGUNDA PARTE** reconoce su deber continuo de informar, durante la vigencia del contrato, cualquier hecho que se relacione con la conducción de cualquier investigación por la comisión de un delito contra el erario, la fe o la función pública; contra el ejercicio gubernamental; que involucre fondos o propiedad pública, en el ámbito federal estatal.



De haber incurrido en alguna de las causas inhabilitantes, deberá presentar la Resolución emitida por la Oficina de Recursos Humanos del Estado Libre Asociado de Puerto Rico en que se certifica su habilitación, copia de la cual se unirá al presente contrato.

Expresamente se reconoce que esta es una condición esencial del presente contrato y de no ser correcta, será causa suficiente para que la parte contratante deje sin efecto el mismo y la parte contratada tendrá que reintegrar a la contratante toda suma de dinero recibida bajo los términos de este contrato.

Si durante la vigencia de este contrato la **SEGUNDA PARTE** incurriera en algunas de las causas inhabilitantes antes indicadas o que resulte positivo la prueba de dopaje, la **PRIMERA PARTE** resolverá el mismo inmediatamente, sin aviso previo.

**VIGÉSIMA QUINTA: CONFIDENCIALIDAD:** La **SEGUNDA PARTE** se compromete a mantener absoluta confidencialidad en cuanto a la información que llegue a su conocimiento sobre los servicios y/o clientela que se compromete a atender en virtud de este contrato.

**VIGÉSIMA SEXTA: INTERPRETACION:** Este contrato estará sujeto en todo momento a las Leyes y Reglamentos del Estado Libre Asociado de Puerto Rico y será interpretado de acuerdo a los mismos. Si cualquiera de las cláusulas, párrafos, oraciones, palabras o partes de este contrato es

KMR-15

declarado nulo o inconstitucional por un Tribunal de Justicia, el resto de las cláusulas, párrafos, oraciones, palabras o partes de este contrato continuarán en efecto para asegurar la intención de las partes contratantes, pudiendo ser interpretados de acuerdo a las provisiones aplicables del Código Civil de Puerto Rico y las leyes que gobiernan la contratación del Estado Libre Asociado de Puerto Rico.

**VIGÉSIMA SEPTIMA: CÓDIGO DE ETICA:** La **SEGUNDA PARTE** se compromete a cumplir con las disposiciones de la Ley Núm. 84 de 18 de junio de 2002, mediante la cual se establece el Código de Ética para Contratistas, Suplidores y Solicitantes de Incentivos Económicos de las Agencias Ejecutivas del Estado Libre Asociado de Puerto Rico.

**VIGESIMA OCTAVA: PÓLIZAS:** La **SEGUNDA PARTE** certifica que no ejerce privadamente su profesión y que presta servicios exclusivamente en las instituciones hospitalarias indicadas en la **CLAUSULA PRIMERA** de este contrato. A base de ello, la **PRIMERA PARTE** reconoce la no necesidad de póliza de responsabilidad profesional por los servicios objeto de este contrato, toda vez que lo cobija la inmunidad del Estado conforme las disposiciones del Código de Seguros de Puerto Rico.

No empece lo anterior, la **SEGUNDA PARTE**, en todo momento cumplirá con las normas de excelencia y se compromete a consultar a un residente de nivel superior y a un "Attending Physician", según requerido por su programa de residencia.

**VIGESIMA NOVENA: LEY FEDERAL HEALTH INSURANCE PORTABILITY AND ACCOUNTABILITY ACT DE 1996:**



A. La ley federal Health Insurance Portability and Accountability Act del 1996 (mejor conocida por sus siglas en inglés HIPAA) y su Regla de Privacidad y Seguridad requieren que toda entidad cubierta por dicha legislación adiestre a su fuerza laboral y establezca Políticas y Procedimientos en cuanto a las disposiciones sobre la privacidad, confidencialidad y seguridad de la información de salud de los pacientes, sea dicha información creada, almacenada, manejada, accesada o transmitida en papel o por medios electrónicos.

B. HIPAA define su fuerza laboral como aquellos empleados regulares, por contrato, transitorios, voluntarios, estudiantes, practicantes y cualquier persona que lleve a cabo una labor en el área asignada por la PRIMERA PARTE, sea o no remunerada.

C. La **SEGUNDA PARTE** forma parte de esa fuerza trabajadora y como tal, está sujeto al cumplimiento de las políticas y procedimientos establecidos por la **PRIMERA PARTE** para el cumplimiento con la Ley HIPAA y su reglamentación relacionada. A tales efectos, deberá:

    i. Ser adiestrado sobre dicha ley, su Regla de Privacidad, Códigos, Transacciones e Identificadores y su Regla sobre la Seguridad de la Información de Salud que es accesada, creada, mantenida, o transmitida por medios electrónicos (ePHI).

    ii. Conocer y obligarse a cumplir con los términos establecidos en la Política y Procedimientos Sobre Prácticas de Privacidad y Seguridad de la **PRIMERA PARTE**.

    iii. Informar de inmediato a la **PRIMERA PARTE**, por escrito, de cualquier uso y/o divulgación de la información de salud protegida de los pacientes que no cumpla con los términos de este contrato. 45 C.F.R. §164.504(e)(2)(ii)(C).

    iv. La **SEGUNDA PARTE** deberá asegurarse de que cualquier agente o subcontratista suyo acepte por escrito las mismas condiciones y restricciones que le aplican a la **SEGUNDA PARTE** en relación a la privacidad de dicha información. 45C.F.R. §164.502 (e) (1) (ii) §164.308 (b) (2) §164.504(e)(2)(ii)(D).

v. En caso de que la **SEGUNDA PARTE** tuviere que divulgar a terceros información de salud protegida de los pacientes, para efectos de cumplir con los términos y condiciones de este contrato y sus deberes y responsabilidades bajo el mismo, antes de divulgar la información obtendrá una seguridad razonable y adecuada de dicho TERCERO, de que la información se mantendrá confidencial y segura, que sólo será divulgada según requerido por ley y únicamente para los propósitos para los que le fue divulgada y de que notificará de inmediato a la **PRIMERA PARTE** cualquier violación a la confidencialidad de la información de que tenga conocimiento. 45C.F.R. §§164.504(e)(2)(i), §§164.504(e)(2)(i)(B), §§164.504(e)(2)(ii)(A) y §§164.504(e)(4)(ii).

vi. Cumplir con todas las políticas de la **PRIMERA PARTE** para la protección de la privacidad, confidencialidad y seguridad de la información de salud de los pacientes, se encuentre esta información en papel o por medios electrónicos. Cumplir con la reglamentación federal para el manejo y custodia de la información de salud protegida, (Protected Health Information, en adelante PHI por sus siglas en inglés), en relación al aspecto administrativo, físico y técnico según estatuido en el 45 CFR secs. 164.308, 164.310, 164.312, 164.316).

D. En cuanto al manejo de la información de salud protegida, PHI que comparten **LAS PARTES**, se requerirá de la **SEGUNDA PARTE** los siguientes estándares para el manejo de PHI:



1. Mantener sistemas que protejan la información de salud protegida, ya sea por medios físicos y/o electrónicos (Protected Health Information, PHI por sus siglas en inglés), contra accesos no autorizados y mantener el cumplimiento con las reglas de seguridad electrónicas de HIPAA, incluyendo pero no limitado a la elaboración de un análisis de riesgo electrónico.

2. Previa solicitud por escrito a la **PRIMERA PARTE**, podrá permitir al individuo, dueño del PHI, accesos a su información de salud. En cumplimiento con la Política de la **PRIMERA PARTE** de divulgar solamente el mínimo necesario a la solicitud de información.

3. Llevar un registro de la información de salud protegida que divulga, del cual deberá tener libre acceso la **PRIMERA PARTE** y mostrado según requerido por esta ultima 45 CFR &164.528.

4. Informar de inmediato a la **PRIMERA PARTE**, cualquier uso o divulgación no autorizada tan pronto tenga conocimiento de este hecho.

5. Incorporar cualquier enmienda a la información de un individuo que le sea transmitida por la **PRIMERA PARTE**.

6. Poner a la disposición del Departamento de Salud y Servicios Humanos Federal (Department of Health and Human Services, DHHS por sus siglas en inglés), sus prácticas internas, libros y expedientes relacionados con el uso y divulgación de información protegida recibida de la **PRIMERA PARTE**.

7. Devolver a la **PRIMERA PARTE** toda la información de salud protegida que mantenga después de terminado el contrato suscrito con la **PRIMERA PARTE**.

8. La **SEGUNDA PARTE** será responsable de la seguridad e integridad de la información de salud de nuestros pacientes y participantes, en particular, aquella que se comparte por artefactos electrónicos móviles. Por lo cual, la **SEGUNDA PARTE**, vendrá obligado a cumplir con los siguientes requisitos:

a) El manejo de información de salud por métodos electrónicos de los pacientes que reciben servicios del Departamento de Salud, nuestros programas, clínicas,

10

hospitales y demás áreas de servicios directo a pacientes, se realizará a través de los equipos que provee el Departamento de Salud.

b) Se limita el manejo de la información de salud por otros métodos móviles a casos extremos en los cuales su intercambio sea necesario para preservar la salud y seguridad de los pacientes y cuando la comunicación sea entre profesionales de la salud debidamente autorizados por la entidad cubierta a compartir información de salud. En tales casos, la información a compartirse será totalmente identificada, de manera que no se identifique al paciente a quien se le presta el servicio.

c) En todos los demás casos, se prohíbe el intercambio, posesión y/o uso de información de salud protegida y confidencial bajo la custodia del Departamento de Salud y sus empleados, a través de artefactos electrónicos móviles tales como:

    i.   Teléfonos celulares.
    ii.  Computadoras portátiles, (cuando su uso sea fuera de los predios del Departamento de Salud y/o que no tenga un mecanismo de cifrado de información autorizado por el Departamento de Salud).
    iii. Memorias portátiles, ("flash drives").
    iv. Discos portátiles.
    v.  Cualquier otro método de intercambio de información electrónica no autorizado por el Departamento de Salud



E. La **SEGUNDA PARTE** será responsable de lo dispuesto en la Subparte C del 45 CFR § 164 relativo al cumplimiento con la protección de la información de salud que se maneja por métodos electrónicos. Deberá informar de inmediato a la **PRIMERA PARTE** tan pronto tenga conocimiento sobre cualquier uso o divulgación de información de salud protegida no autorizada, así como de informar cualquier incidente de seguridad electrónica en la cual se pueda ver expuesta la información de salud de los participantes y pacientes según requerido por 45 CFR § 164.410. Será responsable de costear los gastos que puedan generarse en caso de una violación al manejo de información de salud protegida en su forma física y/o electrónica.

**TRIGESIMA: LITIGIOS:** La **SEGUNDA PARTE** certifica que al momento de suscribir este Contrato no tiene litigios en proceso contra ninguna Agencia o Instrumentalidad Gubernamental, incluyendo al Departamento de Salud.

**TRIGESIMA PRIMERA: EXPEDIENTES MÉDICOS:** La **SEGUNDA PARTE** se compromete a completar los expedientes médicos de los pacientes en forma clara y detallada, indicando cual ha sido el tratamiento administrado, señalando las observaciones y haciendo recomendaciones con pronóstico, resultados y advertencias de seguimiento médico que garanticen el mejor y más adecuado tratamiento del paciente, firmando dicho informe e indicando hora, fecha y demás constancias relevantes a un expediente médico.

**TRIGESIMA SEGUNDA: DISCRIMEN EN LA PRESTACION DE LOS SERVICIOS DURANTE EL ADIESTRAMIENTO:** La **SEGUNDA PARTE** se compromete a no discriminar en la prestación de estos servicios durante su adiestramiento postgraduado por razones de índole política, religiosa, de raza, condición social, edad, sexo, nacionalidad, condición o impedimento físico o mental o por orientación sexual o identidad de género.

**TRIGÉSIMA TERCERA: VACUNACIÓN:** La **SEGUNDA PARTE** será responsable de vacunarse contra la Hepatitis B antes de comenzar a prestar servicios bajo este contrato. La **SEGUNDA PARTE** releva de responsabilidad a la **PRIMERA PARTE** por cualesquiera daños o perjuicios que pueda sufrir la **SEGUNDA PARTE** por el incumplimiento de esta cláusula. La **PRIMERA PARTE** no tendrá la responsabilidad de vacunar a la **SEGUNDA PARTE**.



11