# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| NEIDA CRUZ; MIRTA CRUZ; CARLOS CRUZ; MOISÉS CRUZ, <br><br> Plaintiffs, <br><br> v. <br><br> HOSPITAL EPISCOPAL SAN LUCAS, INC.; GUILLERMO BOLAÑOS, ET.AL., <br><br> Defendants. | CIV. NO. 16-2959 (MDM) |

## OPINION AND ORDER

Plaintiffs, the sons, and daughters of a deceased patient, filed a medical malpractice suit under Puerto Rico law against various defendants, namely, the treating hospital, treating physicians, and the hospital's home care unit, claiming negligence and deviation from the standard of care required of medical professionals under Articles 1802 and 1803 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, §§ 5141 & 5142.

Presently before the Court is co-defendant San Lucas Episcopal Home Care Inc.'s (hereinafter "San Lucas Home Care") Motion for summary judgment in which San Lucas Home Care moves to dismiss the medical malpractice claims asserted against it. (Docket No. 79). With its motion, San Lucas Home Care issued a proposed statement of uncontested material facts. (Docket No. 79-1). In turn, Plaintiffs filed a memorandum opposing the entry of summary judgment (Docket No. 111) and offered their respective statement of uncontested material facts (Docket No. 110). San Lucas Home Care did not offer a reply to the arguments raised by Plaintiffs, nor did it admit, deny, or qualify the additional facts proffered by Plaintiffs.[1] After a close examination

---

[1] Pursuant to Local Rule 56(e) of the Local Rules of the United States District Court for the District of Puerto Rico "[f]acts contained in a supporting or opposing statement of material facts, if

**Case 3:16-cv-02959-MDM   Document 124   Filed 07/12/22   Page 2 of 17**

Neida Cruz; Mirta Cruz; Carlos Cruz; Moisés Cruz v. Hospital Episcopal San Lucas, Inc., *et. al*                    - 2-
Civil No. 16-2959 (MDM)

of the filings, the evidence on record, and the applicable law, the Court **DENIES** San
Lucas Home Care's motion for summary judgment.

## I.   <u>Summary Judgment Standard</u>

Summary judgment is appropriate when "the pleadings, depositions, answers
to interrogatories, and admissions on file, together with the affidavits, if any, show
that there is no genuine issue as to any material fact and that the moving party is
entitled to a judgment as a matter of law." *See,* Fed. R. Civ. P. 56(c); *Celotex Corp. v.
Catrett*, 477 U.S. 317, 322 (1986); *Sands v. Ridefilm Corp.,* 212 F.3d 657, 660 (1st Cir.
2000). A factual dispute is "genuine" if 'it may reasonably be resolved in favor of either
party at trial" and "material" if it potentially affects the outcome of the case. *Iverson
v. City of Boston*, 452 F.3d 94, 98 (1st Cir. 2006).

The party moving for summary judgment has the initial burden of
"demonstrat[ing] the absence of a genuine issue of material fact" with definite and
competent evidence. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S. Ct. 2548,
91 L. Ed. 2d 265 (1986); *Maldonado–Denis v. Castillo–Rodríguez,* 23 F.3d 576, 581
(1st Cir. 1994). Thus, the moving party bears the initial burden of showing a lack of
evidence to support the non-moving party's case. *Id.* at 325. It must identify "portions
of 'the pleadings, depositions, answers to interrogatories, and admissions on file,
together with the affidavits, if any'" which support its motion. *Catrett,* 477 U.S. at
323, 106 S. Ct. 2548 (citing Fed. R. Civ. P. 56(c)). Only when a properly supported
motion has been presented does the burden shift to the non-moving party
"to demonstrate that a trier of fact reasonably could find in [its]
favor." *Santiago-Ramos v. Centennial P.R. Wireless Corp.,* 217 F.3d 46, 52 (1st Cir.
2000) (internal citation omitted). If the non-movant generates uncertainty as to the
true state of any material fact, the movant's efforts should be deemed unavailing.
*Suarez v. Pueblo Int'l,* 229 F.3d 49, 53 (1st Cir. 2000). As such, to defeat summary

---

supported by record citations as required by this rule, shall be deemed admitted unless properly
controverted."

Case 3:16-cv-02959-MDM    Document 124    Filed 07/12/22    Page 3 of 17

Neida Cruz; Mirta Cruz; Carlos Cruz; Moisés Cruz v. Hospital Episcopal San Lucas, Inc., *et. al*                     - 3-
Civil No. 16-2959 (MDM)

judgment, the non-moving party must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

When considering a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences. *See, Liberty Lobby, Inc.,* 477 U.S. at 255. In addition, the Court must review the record "taken as a whole," and "may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 135, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000). Fed. R. Civ. P. 56 does not ask which party's evidence is more plentiful, or better credentialed, or stronger weighted, because summary judgment "admits no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails." *Id.* (citing *Greenburg v. Puerto Rico Maritime Shipping Authority,* 835 F.2d 932, 936 (1st Cir. 1987)). *See, also, Cortés–Irizarry v. Corporación Insular,* 111 F.3d at 187; *see, also, Casas Office Machines, Inc. v. Mita Copystar America, Inc.,* 42 F.3d 668 (1st Cir. 1994). If the court finds that some genuine factual issue remains, the resolution of which could affect the outcome of the case, then the court must deny summary judgment. *Liberty Lobby, Inc.,* 477 U.S. at 248.

## II.    **Factual Allegations**

Plaintiffs Neida Cruz, Mirta Cruz, Moisés Cruz, and Carlos Cruz (collectively "Plaintiffs") brought this action against Hospital Episcopal San Lucas, Inc., Dr. Guillermo Bolaños ("Dr. Bolaños,") Dr. Aurelio Collado ("Dr. Collado,") and San Lucas Home Care for the damages they allegedly suffered as a result of the negligent acts and omissions of all defendants, which they claim, caused the untimely death of their father. (Docket No. 1).[2]

---

[2] The Court had to turn to the complaint to summarize the factual background of this case because the moving party, San Lucas Home Care, did not offer the necessary facts to shed light into what happened to Mr. Cruz Colón. (*See,* Docket No. 1). In the upcoming discussion, moreover, it will become clear that San Lucas Home Care's motion for summary judgment and proposed statement of uncontested material facts are insufficient to support the relief requested.

Mr. Carlos Cruz Colón ("Mr. Cruz Colón") was a 68-year-old male with history of diabetes, end-stage renal disease, congestive heart failure, obesity, and multiple abdominal surgeries. Mr. Cruz Colón was admitted to the facilities of Hospital San Lucas on August 5, 2015, for a ventral hernia repair under the medical care of Dr. Guillermo Bolaños. Mr. Cruz Colón was discharged home on August 10, 2015, with a follow-up appointment with Dr. Bolaños.

On August 11, 2015, Mr. Cruz Colón visited the Emergency Room of Hospital San Lucas with complaints of abdominal pain and discharge from his surgical wound. His abdomen was distended with moderate tenderness and oozing serous-sanguineous fluid from midline. He developed respiratory failure, septic shock, and was hospitalized in the Intensive Care Unit of Hospital San Lucas on mechanical ventilation. Mr. Cruz Colón's condition gradually stabilized, and he was weaned off the respirator and inotropic agents.  He was discharged home on August 27, 2015.

On August 30, 2015, he returned to the Emergency Room of Hospital San Lucas with complaints of yellow-brown material discharge from the wound for the prior two days. Mr. Cruz Colón was re-admitted to Hospital San Lucas with a diagnosis of enterocutaneous fistula and was started on total parental nutrition per central line. Fistula was of high output causing malnutrition and electrolyte abnormalities. During the subsequent two months, there was no improvement or decrease in the output from the fistula.

On November 3, 2015, Mr. Cruz Colón was discharged and sent home on total parental nutrition under the supervision of co-defendants, Dr. Collado and San Lucas Home Care. He was discharged with leukocytosis and fever. Dr. Collado never visited Mr. Carlos Cruz Colón while on home care nor treated him after his discharge from Hospital San Lucas. On November 10, 2015, Mr. Cruz Colón was again brought to Hospital San Lucas with fever and chills, decreased urine output and history of increased output from the enterocutaneous fistula. He was hypoactive and on BIPAP with clinical signs of sepsis. On November 13, 2015, Mr. Cruz Colón was found

unresponsive, pulseless and did not respond to CPR measures. Mr. Cruz Colón died that day at the hospital. (*See,* Docket Nos. 1; 110-3).

### III.   <u>Relevant Facts</u>

The parties' summary judgment pleadings, and the evidentiary record, reveal the following uncontested material facts.[3]

Dr. José Ortiz Feliciano ("Dr. Ortiz Feliciano") is the expert witness for Plaintiffs. He is a general surgeon who deals with pre-operative, operative and post-operative treatment. Dr. Ortiz Feliciano has dealt with multiple cases of recurrent hernia, like the present case.

In his expert report, Dr. Ortiz Feliciano's only allegation of negligence against San Lucas Home Care is included in item number 6, which states as follows:

> Permitted to develop the classic triad of enterocutaneous fistula of sepsis, fluid and electrolyte imbalance during the period of 11/3/2015-11/10/2015 while at home care under the supervision of Dr. Collado. The above stated actions and therapeutic omissions are a departure from accepted medical practice by Dr. Bolaños, Dr. Collado, Hospital San Lucas and Hospital San Lucas Home Care.

(*See,* Exhibit 1 of Docket No. 79 at 3).

During his deposition, Dr. Ortiz Feliciano attested to the following:

> **Q:** Do you know what kind of services were specifically requested from the home care?

---

[3] Pursuant to Local Rule 56, the Court will only deem as genuinely opposed those statements of material facts which the objecting party properly denied or qualified in strict compliance with Local Rule 56(c). The Court also credits only facts properly supported by accurate record citations. *See,* Local Rule 56(e). The Court has disregarded all arguments, conclusory allegations, speculation, and improbable inferences disguised as facts. *See, Forestier Fradera v. Municipality of Mayaguez*, 440 F.3d 17, 21 (1st Cir. 2006); *Medina-Muñoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990).

In this case, as noted above, Plaintiffs issued their own statement of uncontested material facts with their opposition to the motion for summary judgment. San Lucas Home Care did not offer a response to the statements either admitting, denying, or qualifying each statement so, the Court deemed as admitted the facts that were supported by the record citations. Pursuant to Local Rule 56(e) of the Local Rules of the United States District Court for the District of Puerto Rico "[f]acts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted."

> **Dr. Ortiz Feliciano:** The only thing I know based on the resident's notes [is] that it was contingent on the supervision by those two physicians.

(Docket No. 79-5).

> **Q:** From there did you find out what kind of services were requested for the home care?
>
> **Dr. Ortiz Feliciano:** Wound care.
>
> **Q:** Are you aware that the patient was discharged on November 3, 2015?
>
> **Dr. Ortiz Feliciano:** Yes.
>
> **Q:** And that the first visit by the nurse was on November 4, 2015? . . . [O]n the 4th.

*Id.* at 85.

> **Q:** On the 4th. So, the day after he was discharged the nurse went for the initial evaluation, correct?
>
> **Dr. Ortiz Feliciano:** Yes.
>
> **Q:** Do you agree with me that in this case the nurses from San Lucas Home Care performed what they were supposed to do and complied with what was required from them?
>
> **Dr. Ortiz Feliciano:** Complied with his *wound healing*, yes.
>
> **Q:** So specifically[,] you cannot say that the personnel from the home care did not perform what they were supposed to do.
>
> **Dr. Ortiz Feliciano:** No because and I cite, "Patient's TPN was changed, managed the medication and we are waiting for the surgeon's evaluation." So, they were managing the TPN and the medication. That is the note.

*Id.* at 86.

> Wound healing[,] I have no complaints.

*Id.* at 87.

> **Q:** In order for me to be clear[,] as part of your opinion[,]
> you don't have any complaints regarding any deviation
> from the standard of home care by any of the personnel of
> the San Lucas Home care?
>
> **Dr. Ortiz Feliciano:** The nursing personnel no.
>
> **Q:** Did any other personnel deal with the patient?
>
> **Dr. Ortiz Feliciano:** That is the only personnel identified.
> The nursing.
>
> **Q:** Then all the personnel of San Lucas Home care who
> went and provided home care you do not have any
> complaints regarding any deviation from the standard?
>
> **Dr. Ortiz Feliciano:** No.

(Docket No. 79-5 at 87-88).

Dr. Collado stated during his deposition that when a patient is referred to
"Home Care," "Home Care's" personnel evaluates the patient and refers the notes of
what they do to the physician. Dr. Collado admitted under oath that he signed a plan
of care for Mr. Cruz Colón that was not discussed with him by San Lucas Home Care.

Dr. Collado signed a medical order for San Lucas Home Care so that the
institution could charge Mr. Cruz Colón's medical health plan. Dr. Collado admitted
that he signed medical orders for the services provided by San Lucas Home Care to
Mr. Cruz Colón *after* Mr. Cruz Colón had died in order for San Lucas Home Care to
bill the insurance company and collect payment. San Lucas Home Care, in turn,
charged the medical health plan of Mr. Carlos Cruz for the medical services offered
to the patient in November 2015 before he passed away.

## IV.   Discussion

The motion for summary judgment currently before the Court concerns the
post-operative medical care that Mr. Cruz Colón received from San Lucas Home Care
at his home from November 3, 2015, through November 10, 2015, after which he had
to be rushed to Hospital San Lucas where he passed away three days later. San Lucas
Home Care alleges that Plaintiffs cannot make a showing of the institution's liability

Case 3:16-cv-02959-MDM   Document 124   Filed 07/12/22   Page 8 of 17

Neida Cruz; Mirta Cruz; Carlos Cruz; Moisés Cruz v. Hospital Episcopal San Lucas, Inc., *et. al*                                    - 8-
Civil No. 16-2959 (MDM)

for its alleged malpractice in the medical treatment provided to the patient. More specifically, San Lucas Home Care maintains that the evidence of record shows that the actions of its nurses and personnel did not deviate from the required standard of care and, therefore, they are entitled to summary judgment on all claims against it.

A.    Medical Malpractice Liability in Puerto Rico

In this jurisdiction, tort liability for medical malpractice arises under Article 1802 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, Section 5141. Medical malpractice liability in Puerto Rico is negligence and fault based. *Rodríguez-Díaz v. Seguros Triple–S*, 636 F.3d 20, 23 (1st Cir. 2011) (internal citation omitted). To establish a *prima facie* case of medical malpractice a party must establish: (1) the duty owed (i.e., the minimum standard of professional knowledge and skill required in the relevant circumstances); (2) an act or omission transgressing that duty; and (3) a sufficient causal nexus between the breach and the harm. *Otero v. United States,* 428 F. Supp. 2d 34, 45–46 (D.P.R. 2006) (citing *Rivera v. Turabo Med. Ctr. P'ship,* 415 F.3d 162, 167 (1st Cir. 2005)). *Torres–Lazarini v. United States*, 523 F.3d 69, 72 (1st Cir. 2008).

Under Puerto Rico law, a hospital can be held liable to its patients for malpractice when there has been negligence on the part of the hospital's employees. *Márquez Vega v. Martínez Rosado,* 116 D.P.R. 397, 405, 16 P.R. Offic. Trans. 487, 495 (1985). Thus, the hospital's liability is based on the vicarious liability doctrine. *Id. See, Morales v. Monagas*, 723 F. Supp. 2d 416, 419 (D.P.R. 2010). Given the evolutionary nature of hospitals, courts in Puerto Rico also extend vicarious liability "to situations where a patient seeks medical aid directly from a hospital and the hospital provides the treating physician—regardless of the physician's employment relationship with the hospital." *Casillas–Sánchez v. Ryder Mem. Hosp., Inc.*, 960 F. Supp. 2d 362, 366 (D.P.R. 2013) (Besosa, J.). Furthermore, because a hospital also owes an independent duty of care to patients, it may face liability for its own negligence as well. *Márquez Vega*, supra; *Casillas–Sánchez*, 960 F. Supp. 2d at 366. With respect to a hospital's liability towards its patients, the Supreme Court of

Case 3:16-cv-02959-MDM   Document 124   Filed 07/12/22   Page 9 of 17

Neida Cruz; Mirta Cruz; Carlos Cruz; Moisés Cruz v. Hospital Episcopal San Lucas, Inc., *et. al*                          - 9-
Civil No. 16-2959 (MDM)

Puerto Rico has also firmly established that hospitals owe their patients that degree of care that would be exercised by a reasonable and prudent person in the same conditions and circumstances. *See, Márquez Vega,* 116 D.P.R. at 404–405 (internal quotations omitted).

In terms of the standard of care owed specifically by nurses, the Puerto Rico Supreme Court has established that a nurse must use a degree of reasonable care to avoid causing unnecessary harm to the patient, and such degree of care must be equal to the degree of care exercised by other nurses in the locality or similar localities. *Blas Toledo Y Otros v. Hospital Nuestra Señora De La Guadalupe,* 146 D.P.R. 267, 307 (1998), (citing *Castro v. Municipio De Guánica,* 87 D.P.R. 725, 728–729 (1963)). In Puerto Rico, nurses and paramedic personnel have the unavoidable duty to fulfill medical orders with the required urgency and in accordance with each patient's particular circumstances. *Ponce v. Ashford Presbyterian Community Hosp.,* 189 F.R.D. 31, 33 (D.P.R. 1999) (internal citations omitted).

Turning to the causation element, the law of Puerto Rico dictates that to establish causation, a plaintiff must prove by a preponderance of the evidence, that "the [medical provider's] negligent conduct was the factor that 'most probably' caused harm to the plaintiff." *Rivera v. Turabo Med. Ctr. P'ship,* 415 F.3d 162, 168 (1st Cir. 2005). Causation usually cannot be found based on mere speculation and conjecture. Expert testimony is generally essential in order to clarify complicated medical issues that are more prevalent in medical malpractice cases than in standard negligence cases. *Otero,* 428 F. Supp. 2d at 46. *Pages-Ramírez v. Hosp. Espanol Auxillo Mutuo De Puerto Rico, Inc.,* 547 F. Supp. 2d 141, 149 (D.P.R. 2008).

B.    Liability of San Lucas Home Care

San Lucas Home Care alleges that the evidence it has submitted with its motion for summary judgment shows the absence of material issues of fact with respect to its liability for the alleged malpractice in the treatment of Mr. Cruz Colón. San Lucas Home Care premises its theory on the deposition testimony of Plaintiff's expert, Dr. Ortiz Feliciano. To demonstrate a lack of liability, San Lucas Home Care

points to Dr. Ortiz Feliciano's statement during his deposition that the nurses from San Lucas Home Care performed what they were supposed to perform and complied with what was required of them when caring for the patient. San Lucas Home Care also relies on Dr. Ortiz Feliciano's statement that there were no deviations from the standard of care by the nurses of San Lucas Home Care that provided services to Mr. Cruz Colón at his home. Moreover, San Lucas Home Care points to Dr. Ortiz Feliciano's testimony that he did not expect from a nurse to be able to tell if a patient is septic, which the patient became in this case while under the care of San Lucas Home Care, before having to be swiftly transported to the hospital where he died soon thereafter. Relying on such testimony from Plaintiffs' expert, San Lucas Home Care argues that Plaintiffs cannot establish a *prima facie* case of medical malpractice against it and that such proof is dispositive of the inquiry into its potential liability in this case.

By contrast, Plaintiffs contend that summary judgment is improper in this case because they have offered sufficient evidence to create triable issues of material fact as to whether San Lucas Home Care violated its duty of care, and, if so, whether its negligent actions caused and/or contributed to Mr. Cruz Colón's demise. Because the parties' respective positions rely almost entirely on the deposition testimony of Plaintiff's expert, in addition to reviewing the parties' evidence, the Court conducted an independent examination of the important deposition. After a close review of the evidence, the Court agrees with Plaintiffs that there are genuine issues of material fact for a jury to decide concerning whether San Lucas Home Care and/or its staff deviated from the applicable standard of care owed to the patient Mr. Cruz Colón.

To begin with, Plaintiff's expert, Dr. Ortiz Feliciano, testified that the nursing staff of San Lucas Home Care complied with what they were required to do with the patient, in terms of *wound care,* specifically. To that effect, he testified:

> **Q:** Do you agree with me that in this case the nurses from San Lucas Home Care performed what they were supposed to do and complied with what was required from them?

> **Dr. Ortiz Feliciano:** Complied with his *wound healing*, yes.

(*See,* Docket No. 79-5 at 85).

> **Dr. Ortiz Feliciano:** Wound healing[,] I have no complaints.

*Id.* at 86. After closely reviewing his testimony, Plaintiff's expert did not clear the nursing staff from liability in this case. While such testimony is significant indeed, it is not enough to let San Lucas Home Care off the liability hook. To be sure, Plaintiff's expert did *not* opine that the nurses of San Lucas Home Care complied with the applicable standard of care in an all-encompassing manner with respect to the duty owed to the patient in this case. Dr. Ortiz Feliciano's testimony was limited *only* to the nursing staff and their specific duty of *wound care*. To that effect, there are missing pieces to this liability puzzle. For instance, San Lucas Home Care did not offer evidence to show what were the nursing staff's duties with respect to the patient. While it is true that Plaintiff's expert testified that based on *one* medical note, the nursing staff was tasked with "wound care" for the patient, it is unclear whether, in addition to the post-operative *wound care*, the nursing staff was tasked with *additional* duties. San Lucas Home Care thus failed to offer conclusive evidence showing that its nurses were *solely* tasked with providing wound care for the patient and nothing more. Without that information, the Court cannot determine whether there was a deviation from the standard of care by the nursing staff of San Lucas Home Care. The Court finds that such information is crucial in determining San Lucas Home Care's liability.

Next, it is unclear to the Court who were the specific staff members from San Lucas Home Care tasked with the patient's medical care. In other words, San Lucas Home Care failed to explain *who* exactly were the members of its staff that were responsible for caring for Mr. Cruz Colón at his home. Were nurses from San Lucas Home Care the only ones tasked with caring for the patient? Did *other* staff members intervene with, or assist, the patient? And, if so, who were those people and what were their duties? The Court believes all of this information is critical to determining

whether San Lucas Home Care is liable in this case, and, at the moment, it is unknown.

Furthermore, there are questions of fact concerning San Lucas Home Care's rules regarding physician's orders and the manner in which the orders are carried out by their nursing staff. Although nurses need to comply with physician's orders, under Puerto Rico law, nurses are *also* compelled to meet "certain *independent* standards of care." *Pages–Ramírez,* 547 F. Supp. 2d at 149. Similarly, nurses must use a certain degree of care to avoid causing unnecessary harm to the patient. *Blas Toledo,* 146 D.P.R. at 307. Here, the evidence offered by San Lucas Home Care does not show that the nursing staff met this standard.

In addition to the above, Plaintiffs have introduced evidence suggesting that San Lucas Home Care was (perhaps) negligent in the care and treatment of Mr. Cruz Colón. For example, Plaintiff's point to the following portions of their expert, Dr. Ortiz Feliciano's, deposition testimony.

> **Dr. Ortiz Feliciano:** The record states that Dr. Bolaños and Dr. Collado accepted to manage this patient at the nursing home and supervise that [sic] when he was discharged. The patient [however] returned in extremely septic conditions [to Hospital San Lucas] and the records that I was submitted from the nursing home have *no evidence that they supervised or evaluated that patient at that time.*

(Docket No. 79-5 at 78).

> **Q:** Where did you get the information that Dr. Aurelio Collado had the obligation, that he had to supervise the home care treatment?
>
> **Dr. Ortiz Feliciano:** The discharge note from the hospital by the resident says that Dr. Collado and Dr. Bolaños accepted to supervise the management of this case at the nursing home. That is the extent.
>
> …
>
> **Dr. Ortiz Feliciano:** In this specific case[,] I can only state from the record that this is clear that the resident in this discharge note specifies the name of Dr. Bolaños and Dr.

> Collado a[re] the supervising physicians in the management of this case at home.
>
> ...
>
> **Dr. Ortiz Feliciano:** I am saying that the record says that he will supervise[,] and *I found no instance either visiting or written of supervision. So, I cannot state that there was this supervision.*

(Docket No. 79-5 at 80).

> **Dr. Ortiz Feliciano:** *I cannot state as a matter of fact that there was supervision. . . . Supervision means you see the patient and you follow what is going on. But the record is silent of that.*

*Id.* at 81.

> **Q:** *How did that lack of supervision as to the 7 days of home care treatment contribute[,] if in any manner, to the patient's demise?*
>
> **Dr. Ortiz Feliciano**: *Completely.*
>
> **Q:** Why?
>
> **Dr. Ortiz Feliciano:** The patient had a percutaneous fistula. One of the problems that you have is that they will go into liquid. . . They have a large output for the fistula. So, you have fluid imbalance. If you are not on top of that you will develop a fluid imbalance and you will develop sepsis and an electrolyte imbalance. Frankly, and I will state again what I stated before. *This patient should not have been sent [to home care],* I *would not have sent him to simplify them to home care. That is impossible.* The patient had a fistula output of over 500 cc. You have to monitor them daily. How much is he putting in, how much am I giving to him. How is [sic] the electrolytes. That is a hospital-based patient. It is physically impossible to manage him at home.

*Id.* at 82.

> **Dr. Ortiz Feliciano:** If he was supervising him after the first day or the second day[,] *he would have sent this patient back to the hospital.*

(Docket No. 79-5 at 82-83).

>**Dr. Ortiz Feliciano:** *He shouldn't have been sent for home care*. I think sending him to home care contributed to his death.

>**Q:** And for sure the usual home care that could be provided to the patient it was not going to get him stabilized nor improve his condition?

>**Dr. Ortiz Feliciano:** *I don't know how home care accepted it. There is no way that he [Mr. Cruz Colón] should have been accepted.*

*Id*. at 84.

Like Plaintiffs submit, the deposition testimony from Plaintiffs' expert raises several questions of fact regarding whether San Lucas Home Care complied with its obligations and legal duty to protect the health of its patient, Mr. Cruz Colón. Significantly, for instance, Dr. Ortiz Feliciano opined that he doesn't know how, given the patient's complications and symptoms, San Lucas Home Care *accepted* Mr. Cruz Colón for home care in the first place. To that effect, there is expert testimony in this case suggesting that because of Mr. Cruz Colón's condition and the fact that he had a percutaneous fistula, he should *not* have been sent to home care and San Lucas Home Care should *never* have accepted the patient. A trier of fact might find that such expert opinion is indicative of negligence on the part of San Lucas Home Care. There is also expert testimony affirming that Mr. Cruz Colón did *not* receive adequate medical attention or supervision while under the care of San Lucas Home Care. More specifically, Dr. Ortiz Feliciano stated in no uncertain terms during his deposition that the lack of supervision by the medical staff and supervising personnel during the seven (7) days that Mr. Cruz Colón was under the care of San Lucas Home Care "*completely*" contributed to his death. Based on that evidence, Plaintiffs maintain that if San Lucas Home Care did not have the resources or personnel to provide the necessary care and supervision to Mr. Cruz Colón, San Lucas Home Care should *not* have accepted the patient.

Plaintiffs have also raised material issues of fact with respect to *who* was ultimately responsible for *supervising* the patient while under the medical care of San Lucas Home Care. For example, there is an issue of fact as to who was responsible for drafting the medical care plan of the patient for home care and who was responsible for supervising the patient while at San Lucas Home Care. It is noteworthy that Dr. Collado admitted under oath that he signed a plan of care for Mr. Cruz Colón that was *not* discussed with him by San Lucas Home Care. Does this constitute a breach of the duty of care owed by San Lucas Home Care to the patient? There are also questions of fact concerning who was responsible for executing the patient's medical plan at San Lucas Home Care, and who was responsible for communicating the treatment notes and the progress of the patient to the supervising physician to ensure proper care of the patient. To illustrate this point further, based on the Court's independent review of Dr. Collado's deposition testimony, there is conflicting testimony from Dr. Collado himself concerning his own supervising role with respect to the patient while placed in the care of San Lucas Home Care. On one hand, he testified that he was tasked with the patient's supervision. On the other hand, he testified that he never visited the patient, that he had no duty to visit him, nor did he have a duty to communicate with the nursing staff to check on the patient.

The simple facts of this case are that on November 3, 2015, Mr. Cruz Colón was discharged from Hospital San Lucas to his home under the care of San Lucas Home Care. Mr. Cruz Colón was treated by *unknown* staff of San Lucas Home Care, his condition worsened, he became septic, and on November 10, 2015, he had to be rushed to the Emergency Room of Hospital San Lucas where he died shortly thereafter. There are many unanswered questions of fact as to *what* happened to Mr. Cruz Colón while under the care of San Lucas Home Care, such as, whether his sepsis and deteriorated condition could have been avoided, and whether San Lucas Home Care was in any way negligent. There are many parties here trying to wash their hands of liability, but the evidence begs many questions with respect to *who*

owed a duty of care to the patient, *what* was that duty, and *whether* each party complied with that duty?

Based on the foregoing, Plaintiffs have raised material questions of fact over whether San Lucas Home Care failed in some way in providing Mr. Cruz Colón with adequate post-operative care according to the applicable medical standards and whether any deviation from the standard of care by its staff, if one can be found, directly contributed to Mr. Cruz Colón's death. Under these circumstances, and with lack of evidence to the contrary, San Lucas Home Care has failed to place the Court in a position to make a determination as to its liability (or lack thereof) at this juncture. "In a medical malpractice case, issues of deviation from the medical care are questions of fact that must be decided by the jury." *Morales v. Monagas,* 723 F. Supp. 2d 416, 423 (D.P.R. 2010) (Gelpi, J.) (citing *Cortes–Irizarry,* 111 F.3d at 189); *Morrissey v. Procter & Gamble Co.,* 379 F.2d 675, 677 n.2 (1st Cir. 1967) ("[I]ssues of fact are not to be resolved on summary judgment."). As such, because there is no conclusive evidence suggesting that all personnel from San Lucas Home Care complied with the required standard of care in treating Mr. Cruz Colón, the Court cannot discard such party from being a joint tortfeasor in his death. Accordingly, the question of whether San Lucas Home Care is liable in this case cannot be resolved on summary judgment.[4]

---

[4] In the Court's view, there is perhaps another matter precluding the entry of summary judgment in favor of San Lucas Home Care. San Lucas Home Care failed to discuss the appropriate standard of care for a *home care* facility. Without the benefit of the requisite standard of care, *if* it is different from that of a hospital or a treating physician, and without well-developed argumentation supporting a determination that San Lucas Home Care and the staff that treated Mr. Cruz Colón met such applicable standard of care, summary judgment is inapposite.

## V.      <u>Conclusion</u>

Plaintiffs have shown that there are genuine issues of material fact for a jury to consider at trial that require the Court to deny San Lucas Home Care's motion for summary judgment. *See, García Colón v. García Rinaldi*, 340 F. Supp. 2d 113, 128 (D.P.R. 2004); *Pages-Ramírez v. Hosp. Espanol Auxillo Mutuo De Puerto Rico, Inc.,* 547 F. Supp. 2d 141, 152 (D.P.R. 2008). In the end, the issue of whether Mr. Cruz Colón's death was caused by either of the co-defendant physicians' negligence, by the negligence of Hospital San Lucas, San Lucas Home Care, or by a combination of all the parties, is a question for the jury to answer and not a question for this Court. *See, Calcano-Lopez v. Canetti Mirabal*, 106 F. Supp. 2d 200, 205 (D.P.R. 2000).

Accordingly, San Lucas Home Care's Motion for summary judgment at Docket No. 79 is **DENIED**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 12th day of July 2022.

_____
MARSHAL D. MORGAN
United States Magistrate Judge